UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————————————

GULNAR HIJAZI,

                    Plaintiff,            09 Civ. 1268 (JGK)

       - against -            OPINION AND ORDER

PERMANENT MISSION OF SAUDI ARABIA TO
THE UNITED NATIONS,

                    Defendant.
————————————————————————————

JOHN G. KOELTL, District Judge:

    Gulnar Hijazi ("the plaintiff"), a Jordanian citizen
residing in New York, alleges that she was subjected to sexual
harassment, gender discrimination, national origin
discrimination, and retaliation in violation of state and local
law while employed by the Permanent Mission of Saudi Arabia to
the United States ("the defendant").  Specifically, the
plaintiff alleges that Abdul latif Sallam, the defendant's
Charge d'affaires and the plaintiff's supervisor, repeatedly
emailed the plaintiff pornographic materials, made sexually
suggestive remarks to the plaintiff, and subjected the plaintiff
to unwanted physical sexual advances.  The plaintiff further
alleges that she is paid less than less experienced employees
who are Saudi nationals, and that she was subjected to a
campaign of retaliation after complaining about sexual
harassment.

The defendant moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602-11, under the doctrine of forum non conveniens, and for other relief.

**I.**

In defending a motion to dismiss for lack of subject matter jurisdiction, the plaintiff bears the burden of proving the Court's jurisdiction by a preponderance of the evidence. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). When the defendant claims immunity under the FSIA and the defendant "presents a prima facie case that it is a foreign sovereign, the plaintiff has the burden of going forward with evidence showing that, under exceptions to the FSIA, immunity should not be granted, although the ultimate burden of persuasion remains with the alleged foreign sovereign." Cargill Int'l S.A. v. M/T Pavel Dybenko, 991 F.2d 1012, 1016 (2d Cir. 1993) (citations omitted).  In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true.  See J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).  The Court does not, however, draw all reasonable inferences in the plaintiff's favor.  Id.; Graubart v. Jazz Images Inc., No. 02 Civ. 4645,

2006 WL 1140724, at *2 (S.D.N.Y. Apr. 27, 2006).  Indeed, where
jurisdictional facts are disputed, the Court has the power and
the obligation to consider matters outside the pleadings, such
as affidavits, documents, and testimony, to determine whether
jurisdiction exists.  See APWU v. Potter, 343 F.3d 619, 627 (2d
Cir. 2003); Filetech S.A. v. France Telecom S.A., 157 F.3d 922,
932 (2d Cir. 1998); Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006,
1011 (2d Cir. 1986).  In so doing, the Court is guided by that
body of decisional law that has developed under Federal Rule of
Civil Procedure 56.  Kamen, 791 F.2d at 1011; see also S.E.C. v.
Rorech, No. 09 Civ. 4329, 2009 WL 4729921, at *1 (S.D.N.Y. Dec.
10, 2009).


## II.


The plaintiff is a Jordanian national residing in the
United States and has been employed as an Advisor by the
defendant since February 1, 2006.  (Compl. ¶¶ 1-2, 4, 26.)  The
defendant is an agency or instrumentality of a foreign state—
namely the Kingdom of Saudi Arabia.  (Compl. ¶ 3.)  The
defendant's sole purpose is to engage in diplomatic activity on
behalf of Saudi Arabia.  (Emam Decl. ¶ 2.)

Advisors are the defendant's highest ranked employees who
are not career diplomats.  (Emam Decl. ¶ 8.)  The plaintiff's

3

job requirements include attending meetings, both alone and in the company of diplomats, conducting research, and writing memoranda. (Compl. ¶ 4; Emam Decl. ¶ 9.) The plaintiff's employment contract states that in "any dispute arising between the parties concerning any article thereof, the matter shall be referred to the Public Civil Service Bureau in the Kingdom of Saudi Arabia. Its decision thereof shall be final and binding." (Emam Decl. Ex. B at Article 21.) The plaintiff alleges that she was not authorized to speak on behalf of the Saudi Arabian government, although the defendant points to one occasion on which the plaintiff did speak for Saudi Arabia before the United Nations Commission on the Status of Women. (Compl. ¶ 4; Emam Decl. Ex. C.)

The plaintiff has sued alleging that Abdul latif Sallam, the defendant's Charge d'affaires, repeatedly subjected her to sexual harassment including emailed pornographic photos, lewd comments and gestures, and unwanted physical sexual groping. (Compl. ¶¶ 6, 44-59.) When the plaintiff complained about the ongoing harassment, she alleges that she was subjected to retaliation including being moved from a windowed office to a cubicle, denied vacation time, given menial tasks, and, on one occasion, subjected to physical assault. (Compl. ¶¶ 68-94.) The plaintiff also brings claims for gender and national origin discrimination, alleging that the defendant hires few women,

particularly in positions higher than secretary, limits her advancement, and provides perks to Saudi employees that are not given to non-Saudi employees.  (Compl. ¶¶ 32-42.)  The complaint alleges claims for gender discrimination, sexual harassment, hostile work environment, national origin discrimination, and retaliation under the New York State Human Rights Law and the New York City Human Rights Law.

The defendant moves to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1) and the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-11, under the doctrine of forum non conveniens, and for other relief.[1]  The defendant also moved initially to strike the claim for punitive damages from the complaint as well as the plaintiff's jury demand.  The plaintiff conceded that foreign sovereigns are not liable for punitive damages under the FSIA, and that trial by jury against a foreign state is precluded.  See 28 U.S.C § 1330(a) (no jury trial in action against foreign state); 28 U.S.C. § 1606 (foreign sovereign not subject to punitive damages).  Accordingly, the plaintiff's

---

[1] The defendant initially moved to dismiss for lack of personal jurisdiction, arguing that the defendant had not been properly served pursuant to 28 U.S.C. § 1608.  The plaintiff conceded that proper service had not been made, but asked the Court to waive service.  At oral argument, the Court granted the plaintiff an extension of 60 days to effectuate proper service.  In a letter dated November 2, 2009, the parties advised the Court that the defendant had been properly served and the defendant withdrew the motion to dismiss for lack of personal jurisdiction.

claim for punitive damages and the jury demand are stricken from the complaint.

The Court solicited the views of the United States Government with regard to the defendant's motions.  In a Statement of Interest submitted September 16, 2009, the Government agreed with the defendant that this Court did not have personal jurisdiction over the defendant.  Because the defendant has now been properly served, the motion arguing lack of personal jurisdiction has now been withdrawn.  See n.1, supra.  With regard to the defendant's argument that this Court lacks subject matter jurisdiction because of the defendant's alleged immunity under the FSIA, the Government declined to take a position.  The Government explained that the FSIA's legislative history shows that Congress intended that the judiciary make case-by-case determinations when immunity under the FSIA is claimed, freeing the Government from diplomatic pressure and ensuring that such determinations are made purely on legal grounds.

**III.**

The only basis for subject matter jurisdiction in this Court over a foreign sovereign is the FSIA.  See Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 610-11 (1992).  Under

the FSIA, a foreign sovereign is immune from suit in the United States unless a statutory exception applies.  See 28 U.S.C. § 1604 ("a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter."); Weltover, 504 U.S. at 610-11.  It is common ground between the parties in this case that the defendant is a foreign state and that it is immune from suit unless the "commercial activity" exception applies.  See 28 U.S.C. § 1605(a)(2).

Under the commercial activities exception, a foreign sovereign is not immune from suit in any case

> in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States. . . .

Id.  The FSIA defines a "commercial activity" as "either a regular course of commercial conduct or a particular commercial transaction or act.  The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose." 28 U.S.C. § 1603(d).  The FSIA's legislative history indicates Congress's intent that the FSIA give "courts . . . a great deal of latitude in determining what

is a 'commercial activity' for purposes of [the FSIA]." <u>Kato v.</u>
<u>Ishihara</u>, 360 F.3d 106, 110 (2d Cir. 2004) (alterations in
original) (quoting H.R. Rep. No. 94-1487, at 16 (1976), <u>as</u>
<u>reprinted in</u> 1976 U.S.C.C.A.N. 6604, 6615).  The same
legislative history gives examples of what the Congress
considered to be governmental, as opposed to commercial,
activity.  <u>See</u> <u>Kato</u>, 360 F.3d at 110 (governmental activity
includes "the employment of diplomatic, civil service, or
military personnel" while commercial activity includes
"employment or engagement of laborers, clerical staff or public
relations or marketing agents") (quoting H.R. Rep. No. 94-1487,
at 16).

The statute specifies that the Court should focus on the
nature of the activity rather than its purpose.  <u>See</u> 28 U.S.C. §
1603(d).  However, there are two activities by the defendant
involved in this case.  There is the activity of the Permanent
Mission, and there is the specific activity of the defendant's
employment relation with the plaintiff.

The defendant relies on <u>Kato v. Ishihara</u>, in which the
Court of Appeals for the Second Circuit found that an employee
of the Tokyo Metropolitan Government ("TMG") could not sue TMG
for sexual harassment and retaliation in violation of federal
and New York state and local law.  <u>See</u> <u>Kato</u>, 360 F.3d at 108.
The employee performed promotional activities on behalf of

8

Japanese companies such as manning booths at trade shows and
creating marketing reports.  See id. at 109.

    The Supreme Court previously explained that the commercial
activity exception applies when a sovereign "exercises only
those powers that can also be exercised by private citizens, as
distinct from those powers peculiar to sovereigns."  Id. at 111
(internal quotation marks omitted) (quoting Saudi Arabia v.
Nelson, 507 U.S. 349, 360 (1993)).  Relying on this teaching
from the Supreme Court, the Court of Appeals in Kato found that
"we consider whether TMG's activities in New York were typical
of a private party engaged in commerce."  Kato, 360 F.3d at 111.
The Court of Appeals found that TMG's activities were
governmental rather than commercial and that the commercial
activity exception therefore did not apply.  See id. at 112.
TMG engaged in the promotion of Japanese businesses and commerce
and hired the plaintiff for a position where her duties included
"promotional activities on behalf of Japanese companies, such as
manning booths at trade shows to promote specific products" and
writing marketing reports for Japanese companies.  See id. at
109, 111.  The court found that TMG's activities were not
private in nature because the promotion of Japanese commerce in
general is not the "type of action[] by which a private party
engages in trade and traffic or commerce."  Id. at 111 (quoting
Weltover, 504 U.S. at 614) (emphasis in original).  A Japanese

9

private party engaged in business will typically promote its own products and services, but will not ordinarily promote Japanese commerce as a whole.  See Kato, 360 F.3d at 112.  Moreover, to promote commerce as a whole is not necessarily to engage in commerce.  See id. at 112 ("[T]he fact that a government instrumentality like TMG is engaged in the promotion of commerce does not mean that the instrumentality is thereby engaged in commerce.") (emphasis in original).

In Kato, the Court of Appeals also rejected a rigorous black line test of whether the employee was engaged in the civil service.  See id. at 113.  The legislative history of the FSIA, and an earlier decision by Judge Kaplan had looked to whether it could be said that the employee was in the civil service.  See Kato, 360 F.3d at 110 (quoting H.R. Rep. No. 94-1487, at 16) (employment of civil service personnel is example of governmental activity); Al Mukaddam v. Permanent Mission of Saudi Arabia to the United Nations, 111 F. Supp. 2d 457, 463 (S.D.N.Y. 2000) ("[I]f plaintiff was either a civil servant or a diplomatic officer, her employment would not have been commercial in nature . . . .").  Under the approach rejected by the Court of Appeals, if the employee was in the civil service, the employment was a governmental function rather than a commercial activity.  The Court of Appeals cited Weltover for the proposition that a court should not look to whether the

employment resembles the American Civil Service, but inquire
"whether the particular actions that the foreign state performs
. . . are the type of actions by which a private party engages
in trade and traffic or commerce." Kato, 360 F.3d at 111
(quoting Weltover, 504 U.S. at 614) (internal quotation marks
omitted, alterations in original).  The similarity of a foreign
employment relationship to the American civil service may be
helpful, but the question is whether "by extending the
employment [relationship, the sovereign] is engaging in
'governmental' rather than 'commercial' activity." Kato, 360
F.3d at 113.

     It is clear that a secretary employed by the defendant
could sue, because the legislative history indicates that
examples of commercial activities include "employment or
engagement of laborers, clerical staff or public relations or
marketing agents." Kato, 360 F.3d at 110 (quoting H.R. Rep. No.
94-1487, at 16).  Thus, whether a sovereign's employment of an
individual in the United States is commercial in nature depends
both on the nature of the sovereign's activities in the United
States of which the plaintiff's employment is a part and the
extent to which the plaintiff's individual duties are themselves
either integral or incidental to any governmental function.

     The plaintiff relies on Mukaddam, a case from this District
that predates Kato, and which was distinguished in Kato.  In

Mukaddam, Judge Kaplan found that the Permanent Mission of Saudi
Arabia to the United Nations was not entitled to immunity under
the FSIA from a suit initiated by an employee in much the same
position as the plaintiff in this case.  See Mukaddam, 111 F.
Supp. 2d at 466.  The court noted that if the plaintiff were a
member of the civil service, then the plaintiff's employment
could not be classified as commercial in nature and the
commercial activities exception would not apply.  Id. at 463.
The Court also concluded that the plaintiff could not be
considered a member of the Saudi Mission's diplomatic personnel.
Id. at 465.  Because the plaintiff could not be classified as a
member of the civil service or the diplomatic personnel, the
court engaged in a further inquiry to determine whether the
commercial activity exception applied.  The court looked to the
"critical question of whether a private party, as opposed to a
sovereign, could have engaged in an identical employment
relationship with plaintiff." Id. at 466.  Finding that private
parties "routinely" enter into employment contracts with
employees "to perform research, writing, and clerical duties on
its behalf," the court concluded that the commercial activities
exception did apply and the defendant was not immune from suit.
Id. at 466.  Thus, while Mukaddam is no longer good law to the
extent it emphasized a determination of whether the plaintiff is

in the civil service, Mukaddam considered that issue only to
discard it as a sine qua non.

    If Mukaddam were still good law, it would plainly favor the
plaintiff.  However, Mukaddam declined to look to the "broader
context of plaintiff's employment and whether it was designed to
fulfill a sovereign function."  Id.  While the statutory
language clearly requires that a court look to the nature rather
than the purpose of the sovereign's activity, Kato indicates
that the focus of the inquiry ought to be on the employer's
general actions rather than the specific employment contract at
issue.  Compare 28 U.S.C. § 1603(d) (commercial activity defined
by reference to the nature of the activity rather than its
purpose), with Kato 360 F.3d at 111-12 (looking to whether the
employer TMG's actions in promoting Japanese commerce in general
was the type of activity that a private party would engage in).

    Under Kato the first inquiry is whether the activity to
which the plaintiff's employment was directed is governmental.
See id. (looking to whether ultimate activity to which the
plaintiff's employment was directed, namely the promotion of
Japanese commerce, is governmental); see also Guevara v.
Republic of Peru, 468 F.3d 1289, 1298-99 (11th Cir. 2006)
(commercial activity exception applies to offer of reward for
location and capture of fugitive when private parties do offer
such rewards even though ultimate capture of fugitives is

generally a sovereign function); Globe Nuclear Servs. & Supply (GNSS), Ltd. v. AO Techsnabexport, 376 F.3d 282, 289 (4th Cir. 2004) (commercial activity exception applies when foreign sovereign's specific and general activities resemble those of private party).  In this case the ultimate activity to which the plaintiff's employment is directed is plainly diplomatic, and therefore governmental.

The second inquiry is whether the plaintiff's employment relationship was sufficiently intertwined with that activity to provide that the employment relationship itself was part of the governmental function.  For example, it would be clear that hiring purely clerical staff, even clerical staff that types diplomatic speeches, comes within the commercial activity exception.  Compare UNC Lear Servs., Inc. v. Kingdom of Saudi Arabia, 581 F.3d 210, 216-17 (5th Cir. 2009) (employment contract between foreign sovereign and employees who provided military training and airplane maintenance not within commercial activity exception when contract was for personnel vital to an "undeniably sovereign" military project), with Park v. Shin, 313 F.3d 1138, 1145 (9th Cir. 2002) (Deputy Consul General's hiring of domestic servant falls within commercial activity exception even when domestic employee occasionally aids with entertaining guests of the Consulate).  In this case, the plaintiff's activities are sufficiently intertwined with the defendant's

14

governmental function to fall outside the commercial activities exception.  The plaintiff was an Advisor, the number two employee in both departments in which she worked, just below the diplomatic level.  It is clear from the facts put forth by the defendant, without contradiction, that the plaintiff performed significant duties in that position, including speaking on one occasion on behalf of Saudi Arabia at a United Nations conference.  Therefore, the plaintiff's employment relationship with the defendant is governmental in nature and the commercial activity exception to the FSIA does not apply.  The defendant is therefore immune from suit in this matter in United States courts.[2]

---

[2] Because the defendant is immune from this suit, it is unnecessary to reach any alternative argument for dismissal.

**CONCLUSION**

The defendant's motion to dismiss for lack of subject

matter jurisdiction is **granted**. The Clerk is directed to close

Docket No. 3. The Clerk is directed to enter judgment

dismissing the Complaint without prejudice for lack of

jurisdiction and closing this case.

**SO ORDERED.**

**Dated:    New York, New York**
**February 12, 2010**

John G. Koeltl
United States District Judge

16